# UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

Ardelia H.
Plaintiff v.
**Shaker Heights City School District,**
**Board of Education of Shaker Heights,**
**Dr. David Glasner, Superintendent,**
**Sue Roth, Employee,**
et al.
Defendants



FILED
DEC 23 2025
CLERK, U.S. DISTRICT COURT
NORTHERN DISTRICT OF OHIO
CLEVELAND

**COMPLAINT FOR DAMAGES AND DECLARATORY RELIEF**

Case No.: 1:25-cv-02310-DCN
**Jury Trial Demanded**

# FIRST AMENDED COMPLAINT

FOR DAMAGES AND DECLARATORY RELIEF

Plaintiff Ardelia Holmes files this **First Amended Complaint as a matter of course pursuant to Federal Rule of Civil Procedure 15(a)(1).** This First Amended Complaint supersedes the original complaint and includes additional facts and allegations concerning Defendants' post-filing conduct.

# I. INTRODUCTION

This is a civil rights action brought under 42 U.S.C. §1983 and other federal statutes to address ongoing and escalating patterns of racial discrimination, retaliation, defamation, and rights violations against Plaintiff Ardelia Holmes, a parent, former district employee, and current candidate for public office in the Shaker Heights City School District. This complaint arises from a documented series of harms spanning from the 2023–2024 school year through present,

culminating in the suppression of protected speech, blacklisting from employment, denial of public records, and reputational damage, all committed under color of law and in violation of Plaintiff's civil and constitutional rights.

## II. JURISDICTION AND VENUE

1. This Court has subject matter jurisdiction under 28 U.S.C. §§ 1331 and 1343, and 42 U.S.C. § 1983.
2. Venue is proper under 28 U.S.C. § 1391(b), as the events giving rise to these claims occurred within this District and involve parties located therein.

## III. PARTIES

3. **Plaintiff** Ardelia Holmes is a resident of Cuyahoga County, Ohio. She is a parent of 4 children, 3 currently enrolled in the Shaker Heights City School District, a former temporary employee of the district, and a current school board candidate.
4. **Defendant** Shaker Heights City School District is a public education agency operating under Ohio law, with its central office located in Shaker Heights, Ohio.
5. **Defendant** Board of Education of Shaker Heights is the publicly elected governing body responsible for overseeing the District.
6. **Defendant** Dr. David Glasner is the current Superintendent of Shaker Heights City School District and was acting under color of law at all relevant times.
7. **Defendant** Sue Roth is a current employee of the District and acted in her official and individual capacities in committing the discriminatory and retaliatory conduct described herein.

## IV. STATEMENT OF FACTS

1. Plaintiff, Ardelia Holmes, is a Black woman, a longtime resident of Shaker Heights, Ohio, a parent of students in the Shaker Heights City School District ("District"), a former temporary employee of the District, and a 2025 candidate for the Shaker Heights Board of Education.
2. During the 2023–2024 school year, Plaintiff's oldest daughter experienced a significant trauma, the sudden death of her father. In response, Plaintiff made multiple requests to District officials for trauma-related academic support including Bellfaire services, personalized learning placement, wraparound support, emotional support and any accommodations available.

3. Despite persistent written and verbal requests, Plaintiff's daughter received no meaningful services until the end of the academic year (May 2024), at which point her grades had suffered significantly and she was deemed to have failed her 10th-grade year. The District provided no offer of a 504 Plan or equivalent support, even though Plaintiff had flagged the seriousness of her daughter's emotional state and the potential for harm.
4. While these events were ongoing, Plaintiff accepted a temporary substitute teaching position with the District at Boulevard Elementary in January 2024, where she reported to Sue Roth. During that assignment, Plaintiff documented repeated instances of administrative failure and student safety concerns, including improper handling of food allergy protocols that put her son at risk, and discriminatory verbal treatment as well as intimidation and retaliatory behaviors directed at one of her daughters by Roth.
5. In February 2024, Plaintiff submitted a formal written complaint to both the Boulevard principal and Superintendent Dr. David Glasner, detailing concerns regarding the professional conduct and behavior of Defendant Sue Roth, including hostile interactions, inappropriate treatment of students, selective enforcement of discipline, and safety concerns related to student supervision and allergy accommodations.
6. Plaintiff initially addressed these concerns directly with Roth and subsequently escalated them to school administration, including Dr. Brenda Turner, who acknowledged the concerns and convened a meeting with involved staff. Following this escalation, Plaintiff observed a marked change in the treatment of her minor child at school, including retaliatory and punitive actions that were disproportionate, intimidating, and unrelated to any misconduct by the child.
7. In an effort to remove herself from a hostile work environment at Boulevard Elementary School, Plaintiff resigned from her position and independently accepted a different temporary assignment at Woodbury Elementary School. While at Woodbury, Plaintiff documented and reported concerns including a potential sexual misconduct incident among students that was reported directly to her. Although the incident was acknowledged by school administration, Plaintiff was instructed not to speak about it further and was provided no information regarding any investigation or outcome.
8. Shortly thereafter, Plaintiff's position with the District at Woodbury Elementary School was abruptly terminated without explanation or clearly documented reason. The termination occurred in close temporal proximity to Plaintiff's reporting of the potential sexual misconduct incident and her prior advocacy regarding student safety and staff conduct.
9. Despite the prior termination, Plaintiff was permitted to reapply and was reapproved to substitute in the District for the 2024–2025 school year. Plaintiff completed fingerprinting requirements in March 2025 and continued to have access to substitute assignments through May 1, 2025.
During this period, Plaintiff raised renewed concerns regarding grading practices affecting her eldest daughter, including the use of subjective and inconsistent criteria, delays in correcting grades despite evidence of completed work, and the lack of trauma-informed academic consideration following documented family loss. Plaintiff sought grade corrections, clarification of academic standards, and administrative review through multiple communications with school staff and leadership.

10. Despite repeated requests, Plaintiff experienced ongoing delays, denials, and a failure by school leadership, including the District's Chief of Diversity, Equity, and Inclusion, to provide timely grade corrections, meaningful alternatives, or transparent review. After internal efforts failed to resolve the issue, Plaintiff publicly released a formal equity and discrimination statement on May 1, 2025, addressing the District's continued failure to respond to educational disparities and calling for accountability and transparency.
11. Following the public release of Plaintiff's May 1, 2025, equity and discrimination statement, Plaintiff observed that her access to the District's substitute assignment system was silently revoked. Plaintiff received no notice, explanation, or documentation of cause. The revocation occurred immediately after the protected public disclosure and effectively barred Plaintiff from further employment opportunities with the District.
12. In the summer of 2025, Plaintiff released additional advocacy materials and campaign statements as she entered the public race for Shaker Heights School Board. During this time, she filed formal complaints with the District's DEI (Diversity, Equity, and Inclusion) department, Superintendent and School Board members regarding her children's treatment, repeated data suppression, and systemic inequities.
13. On October 1, 2025, an incident occurred at Boulevard Elementary School in which Defendant Sue Roth repeatedly referred to Plaintiff's minor daughter as an "evil little girl" in the presence of other students and staff. Multiple adults and students heard Roth make these statements openly and observed her directing other students to distance themselves from the child. Plaintiff's daughter further reported that Roth referred to her directly using racially charged language, including calling her an "evil Black girl," and told her to "go to hell" during the same incident. These remarks were directed at the child personally and occurred within the broader context of Roth's repeated public denigration of the student. Despite prior notice and repeated requests that Roth have no further contact with Plaintiff's daughter, the District failed to reassign Roth or implement protective measures. The District had previously been alerted to concerns regarding Roth's racially hostile conduct toward students but failed to take corrective action. This incident reflected a pattern of deliberate indifference to racially hostile conduct and a failure to protect Black students from discriminatory treatment.
14. Following the incident, rather than immediately addressing the misconduct, the District's legal representative initiated contact with Plaintiff under the guise of a private investigative interview. This outreach occurred only after Plaintiff had already requested a formal investigation into Roth's conduct and the broader pattern of discrimination. The timing and nature of the District's response raised concerns that the action was reputationally defensive rather than aimed at accountability or student protection.
15. Plaintiff's public campaign statements and advocacy, including remarks delivered during the July 1, 2025, Board of Education meeting, contributed to increased public scrutiny, media discussion, and community debate regarding equity, governance, and accountability within the District. Plaintiff's advocacy included the presentation of original equity data and public-facing analysis highlighting patterns of institutional neglect and racial disparity.
16. On August 18, 2025, Plaintiff filed a formal civil rights complaint with the U.S. Department of Justice, Civil Rights Division (Record No. 653220/DFC), alleging

    systemic racial discrimination, financial obfuscation, and inequitable access to educational services within the Shaker Heights City School District. The complaint documented both personal and community-wide civil rights violations and requested federal review.

17. In parallel, Plaintiff submitted a formal complaint to the U.S. Department of Education's Office for Civil Rights concerning ongoing discrimination, grading bias, inequitable educational access, and perceived retaliation by the District. This complaint was formally received under Case ID OCR-E-MAIL-00757294H and forwarded to the Denver Regional Office for review. These filings reflected Plaintiff's continued efforts to seek lawful federal oversight and accountability after internal remedies failed.
18. As a public candidate, advocate, and whistleblower, Plaintiff has been subjected to ongoing retaliation, including misrepresentation by District leadership, suppression of her requests for public financial and racial equity records, and monitoring of her public social media activity by District officials and sitting Board members, which was referenced during an October Board of Education meeting. Plaintiff was further subjected to slanderous commentary in public forums and hostile engagement by District officials, including Board members and levy committee representatives.
19. Plaintiff made multiple lawful requests for financial data, staff ratios, administrative counts, spending records, racial performance indicators, and budget allocations pursuant to Ohio public records laws and applicable transparency statutes. Many of these requests were ignored, delayed, or only partially fulfilled, impairing Plaintiff's ability to analyze public data, advocate for equity reforms, and engage meaningfully in civic and campaign activity.
20. As of the date of this filing, Plaintiff has suffered ongoing professional, reputational, and psychological harm as a result of the District's discriminatory, retaliatory, and defamatory actions. These acts were taken under color of law and in violation of Plaintiff's civil and constitutional rights.

## IV.A. SUPPLEMENTAL STATEMENT OF FACTS

After Plaintiff filed this federal civil rights action on October 27, 2025, Defendants' retaliatory conduct escalated and was redirected toward Plaintiff's minor children who remained enrolled in the Shaker Heights City School District.

**Election Day Publication Targeting Plaintiff (November 4, 2025)**

On November 4, 2025 "Election Day," *The Shakerite*, the District's high school student newspaper operating under District supervision and with a District-employed faculty advisor, published an article titled "BOE Candidate Holmes Sues District for $5 Million." The article

featured a photograph taken from the Plaintiff's personal social media account and publicly disclosed, for the first time, the existence of Plaintiffs federal lawsuit against the district.

The original social Media posts from which the photograph was taken address trauma informed mental health advocacy for students and encourage parents to understand and exercise their educational rights, including awareness of support such as Section 504 plans and special education services. The post arose from Plaintiff's advocacy following the district's failure to offer trauma informed academic accommodations to her child after the sudden death of her father.

The article removed this context and framed Plaintiffs advocacy as antagonistic toward public education, emphasizing the monetary amount of the lawsuit and portraying Plaintiff as hostile rather than as a parent and candidate raising concerns about student welfare and equity.

The article was published during active voting hours on Election Day, leaving Plaintiff no meaningful opportunity to respond or contextualize the coverage before polls close, Plaintiff has documented statements from voters who indicated that they changed their vote after reading the article, demonstrating concrete and measurable electoral harm. Enter the timing, framing, and use of district supervised student media to publicly disclose Plaintiff's lawsuit during an active election constituted retaliation for Plaintiffs protective speech and candidacy and was carried out under color of law.

### Litigation-Related Harassment of Plaintiff's Children

Following publication of the article and references to Plaintiff's lawsuit, Plaintiff's children were subjected to escalating harassment directly tied to Plaintiff's protected activity. Plaintiff's daughter Layah was subjected to repeated harassment, including statements that she should "kill herself," "get hit by a car," or "die of cancer." Students explicitly referenced "the $5 million lawsuit because her mom thinks everyone is racist," demonstrating that litigation-related animus was being allowed to circulate unchecked within the school environment.

### Physical Violence, Death Threats, and District Inaction

Plaintiff's son, Cartier, was subjected to repeated physical assaults at school, including being choked to the point of visible neck redness, held down, and attacked by multiple students during recess. Cartier also reported receiving explicit death threats from peers, including statements such as "I will kill you" and "I will shoot you," which were reported to school administrators.
Cartier became fearful of entering the school building and was repeatedly characterized by staff as "the problem" when attempting to defend himself from violence. Plaintiff received

frequent calls accusing Cartier of aggression even when his conduct was a direct response to being hit, shoved, or threatened.

Cartier experienced significant emotional deterioration, ongoing fear, and loss of trust in staff. He expressed that he "didn't want to be here" and "wished he was dead," statements that school administrators acknowledged were connected to the bullying and hostile environment.

Despite Plaintiff's repeated verbal and written reports and Cartier's own statements, the building principal concluded that there was "no evidence" of bullying. The investigation was narrowly limited to a single incident and relied primarily on staff interviews, despite Plaintiff's documentation of multiple incidents involving different students over an extended period.

Plaintiff was informed that other incidents were treated as isolated misconduct rather than bullying, despite their cumulative severity and impact. This conclusion contradicted the principal's direct knowledge of Cartier's injuries, threats, emotional distress, and fear of attending school.

### Withdrawal of Cartier and Resulting Harm

On November 30, 2025, Plaintiff submitted written notice to the building principal, with copies to District leadership including the Superintendent and Board members, formally withdrawing Cartier from Boulevard Elementary School due to safety concerns.

In this communication, Plaintiff detailed the pattern of physical assaults, death threats, emotional deterioration, and Cartier's expressed statements that he wished he were dead or did not want to be alive. Plaintiff emphasized that these concerns had been repeatedly reported over the prior month and that the District's investigation had nevertheless concluded there was "no evidence" of bullying.

Plaintiff further advised that the harm extended beyond Cartier, noting that another child, Elle, had also been subjected to physical violence without appropriate intervention and had been instructed not to defend herself. Plaintiff requested a written safety review and meaningful protective action. No substantive response was provided.

### Notice of Suicidal Ideation and Deliberate Indifference

On December 9, 2025, Plaintiff was informed by school staff that Layah had expressed suicidal thoughts following conflicting reports of an incident at school. Plaintiff documented that this was the first time Layah had ever expressed suicidal ideation.

Plaintiff also addressed these issues publicly at a Board of Education meeting, stating that she had exhausted internal reporting channels without receiving protection, accountability, or meaningful response, and that public disclosure was necessary to safeguard her children and seek accountability. Plaintiff communicated that this development occurred after weeks of unresolved harassment, retaliation following the Election Day article, and the District's failure to respond to

Plaintiff's concerns regarding safety and the cumulative impact of the District's inaction on her children's mental health and safety.

# V. CLAIMS FOR RELIEF

### Count 1: Racial Discrimination in Education (42 U.S.C. §1981, Title VI)

Defendants denied Plaintiff's children equal access to educational resources and services based on race, failed to provide trauma-informed support, and engaged in disparate treatment.

### Count 2: Retaliation Under Color of Law (42 U.S.C. §1983)

Plaintiff was subjected to termination, blacklisting, and harassment following protected activity (raising discrimination complaints, public speech, campaign advocacy). Defendants' post-filing conduct, including permitting harassment of Plaintiff's children, allowing classroom discussions of her lawsuit, ignoring explicit notice of suicidal ideation, and forcing Plaintiff to withdraw her child for safety constitutes unlawful retaliation for Plaintiff's protected speech and petitioning activity.

### Count 3: First Amendment Retaliation

Defendants suppressed Plaintiff's constitutionally protected speech through retaliation, reputational attacks, and denial of public opportunities. The Election Day publication and subsequent retaliation against Plaintiff's children were intended to punish Plaintiff for her political speech, candidacy, and litigation activity and to deter further advocacy.

### Count 4: Violation of Ohio Public Records Act (Ohio Rev. Code § 149.43)

District failed to provide requested equity and financial data despite repeated lawful public records requests.

### Count 5: Defamation and False Light

Defendants made or enabled false, damaging statements that impugned Plaintiff's character, calling into question her fitness, intelligence, and intentions, particularly while she was campaigning for public office.

### Count 6: Intentional Infliction of Emotional Distress

Through a pattern of targeted actions and inaction, including defamation, retaliation, and discrimination, Defendants caused severe mental, emotional, and reputational injury to Plaintiff.

**Count 7: Deliberate Indifference to Known Serious Harm to Minor Children (Violation of the Fourteenth Amendment actionable under 42 U.S.C. §1983)**

Plaintiff's minor children were subjected to severe harassment, physical violence, death threats, and retaliation directly related to Plaintiff's protective litigation activity. Defendants, acting under color of state law and with actual knowledge of these risks, affirmatively increased and prolonged the danger to Plaintiff's minor children by dismissing documented threats, narrowing investigations, discouraging reporting, mischaracterizing victims as aggressors, and failing to implement protective measures. This deliberate indifference to a known and substantial risk of serious harm violated the minor children's substantive due process rights under the Fourteenth Amendment.

# VI. PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully demands judgment as follows:

1. That the court acknowledge Plaintiffs' pursuit of administrative remedies through formal complaints filed with the U.S. Department of Justice, Civil Rights Division and the U.S. Department of Education, Office for Civil Rights, and take judicial notice of these filings as part of the factual record supporting the Plaintiff's claims of systemic and ongoing civil rights violations.
2. An order requiring an independent federal or court appointed audit of the District's equity policies, compliance practices, investigative procedures, and public transparency mechanisms, including, but not limited to grading practices, discipline, student safety responses, retaliation safeguards, and staff accountability.
3. An order requiring public reporting and community disclosure of identified disparities in academic performance, access to educational services, discipline, grading, staff conduct, and accountability measures disaggregated by race and relevant student subgroups.
4. A Cease-and-Desist order barring further retaliation, discrimination, defamation, intimidation, surveillance, or obstruction of Plaintiff's constitutional rights, including but not limited to her rights to political activity, public speech, parental advocacy, and civic participation, and barring further retaliatory or discriminatory conduct toward Plaintiff's minor children.
5. A declaratory judgment that Defendants violated Plaintiff's constitutional and civil rights under federal law, including through deliberate indifference to known harassment, threats, and psychological harm inflicted upon Plaintiff's minor children.
6. An injunction prohibiting future retaliation, employment exclusion, misuse of public office, or discriminatory practices against plaintiff and her minor children, and requiring Defendants to implement appropriate protective measures, trauma informed responses, and non-retaliatory practices to ensure student safety and parental advocacy rights.
7. An award of compensatory damages in the amount of $5,000,000, including damages for reputational harm, emotional distress, lost income, professional exclusion, public

retaliation, and the emotional, psychological, and educational harm suffered by Plaintiff's minor children, including costs associated with clinical mental health treatment and alternative education arrangements necessitated by Defendants conduct.
8. An award of punitive damages as the Court deems just and appropriate to punish and deter willful, reckless, and malicious violations of civil and constitutional rights.
9. An award of all costs of this action, including attorney's fees if applicable.
10. Such other and further relief as the court deems just and proper.

## VII. JURY DEMAND

Plaintiff demands a trial by jury on all issues so triable.

**Respectfully submitted,**

*/s/ A. Holmes*

Ardelia Holmes
12700 Fairhill rd.
Shaker Heights, Ohio 44120
216-972-1240
**Pro Se Plaintiff**